IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE

**DABNEY AND PAMELA HAMNER,
PARENTS AND NEXT FRIEND, OF I. H.,**
    **PLAINTIFFS,**

**v.**                                              **CASE NO. 2:23-CV-02393**

**FREEDOM PREPARATORY ACADEMY
AND BOARD OF DIRECTORS, IN THEIR
OFFICIAL CAPACITY ONLY,**
    **DEFENDANTS.**

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

Defendants Freedom Preparatory Academy and Board of Directors ("Defendants" or "Freedom Prep"), through undersigned counsel, file this Memorandum in Support of Defendants' Motion to Dismiss.

On February 6, 2023, I.H. (an 18-year old student at Freedom Prep) was taken into custody by the Southaven Police Department for allegedly calling the suicide hotline during the school day and threatening to "blow his school up" and to "harm himself." I.H. has not been allowed to return in person to Freedom Prep and has been told that he may not return until there is a clearance from the Southaven Police and/or a "statement from a mental health therapist." Plaintiffs deny that I.H. made the call and have brought this action, alleging sexual discrimination under Title IX of the Education Amendments of 1972 ("Title IX"), 20 U.S.C. § 1681 *et seq.*; violation of the Tennessee Public Records Act, T.C.A. § 10-7-503, *et seq.* ("Public Records Act"); violation of T.C.A. § 49-1-704, a part of the Data Accessibility, Transparency and Accountability Act, T.C.A. §§ 49-1-701, *et seq.* ("DATA Act"); and intentional infliction of emotional distress under Tennessee law.

As explained below, Plaintiffs Complaint fails to state a claim for the following reasons:

(i) Plaintiffs do not state a sexual discrimination claim required for a Title IX action; (ii) Plaintiffs are Mississippi residents and only Tennessee citizens have the right to records under the Tennessee Public Records Act; (iii) there is no private right of action under the DATA Act; and (iv) Defendants are immune from claims for intentional infliction of emotional distress ("IIED") under the Tennessee Government Tort Liability Act ("GTLA"), T.C.A. § 29–20–101 *et seq*., or, in the alternative Plaintiffs' allegations are insufficient to state an IIED claim under Tennessee law. Consequently, this Court should dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6).

## ALLEGATIONS RELEVANT TO THIS MOTION[1]

Plaintiffs Dabney and Pamela Hamner are the parents of I.H., who suffers from autism spectrum disorder that does not impede his school attendance.[2] All Plaintiffs are Mississippi residents.[3] Freedom Prep is a local licensed Tennessee charter school governed by its Board of Directors.[4] I.H. has been enrolled as a student at Freedom Prep since 2018 and should be in the 12th grade for the school year 2023-2024.[5]

On February 6, 2023, I. H. was taken into custody by the Southaven Police Department for allegedly calling the suicide hotline during the school day and threatening to "blow his school up" and to "harm himself."[6] I.H. has not been allowed to return to Freedom Prep since February 6, 2023, and has been told that he may not return until there is a clearance from the Southaven Police and/or a "statement from a mental health therapist."[7] Plaintiffs deny that I. H. made the call to the suicide hotline and allege that he was instead the victim of "swatting," whereby two individuals

---

[1] For the purposes of this Motion, the Court must accept these allegations as true. For the record, Defendants certainly do not admit that all of these allegations are true.
[2] [Complaint (ECF No. 1) ("Compl.") at ¶¶ 9, 10, 13].
[3] [*Id*. at ¶¶ 9, 10].
[4] [*Id*. at ¶¶ 11, 12].
[5] [*Id*. at ¶ 13].
[6] [*Id*. at ¶¶ 15, 16].
[7] [*Id*. at ¶¶ 20, 38].

that I. H. met online used his identity to place the suicide hotline call with the aim of "stocking a large police presence."[8] Plaintiffs have requested copies of records supporting Freedom's Prep refusal to allow I.H. to return to school, but claim no records have been produced.[9]

Plaintiffs allege that Freedom Prep's conduct was so outrageous that it is not tolerated in civilized society, and that I.H. has suffered serious emotional injury, as well as harm to his reputation and educational health.[10]

## STANDARD OF REVIEW

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (*quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (internal marks omitted). The Court need only accept "well-pleaded factual allegations" that "plausibly give rise to an entitlement to relief." *Bates v. Green Farms Condo. Ass'n*, 958 F.3d 470, 480 (6th Cir. 2020) (quoting *Iqbal*, 556 U.S. at 678-79). While the Court must construe the complaint in the light most favorable to the plaintiff, it "need not accept as true legal conclusions or unwarranted factual inferences" and "conclusory allegations or legal conclusions masquerading as factual allegations will not suffice." *In re Travel Agent Comm'n Antitrust Litig.*, 583 F.3d 896, 902–03 (6th Cir. 2009) (internal citations and marks omitted). A plaintiff's obligation "requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Twombly*, 550 U.S. at 545. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (internal marks omitted) (quoting Fed. R. Civ. P. 8(a)(2)).

---

[8] [*Id.* at ¶¶ 22, 24].
[9] [*Id.* at ¶ 26].
[10] [*Id.* at ¶¶ 43, 44].

**ARGUMENT**

Plaintiffs make sweeping allegations of improper actions by Freedom Prep, but the allegations do not plausibly give rise to an entitlement to relief under the asserted causes of action. For the Title IX claim, there is no allegation that I.H. suffered any adverse consequence "on the basis of sex", as required for such claims. For the Tennessee statutory claims, only Tennessee residents have the right to records under the Tennessee Public Records Act, and there is no private right of action under the portion of the Tennessee DATA Act invoked by the Plaintiffs. Finally, Plaintiffs' IIED claim fails because Freedom Prep is immune from such claims under GTLA, or alternatively Plaintiffs' allegations are insufficient to state an IIED claim under Tennessee law.

**I.       Plaintiffs' Title IX claim must be dismissed as there are no allegations of adverse actions "on the basis of sex".**

Title IX provides that "[n]o person in the United States shall, ***on the basis of sex***, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a) (emphasis added). In these circumstances, a plaintiff may establish a Title IX claim under two different legal theories: (1) if the outcome of the institution's disciplinary action is erroneous due to gender bias, *Doe v. Miami Univ.*, 882 F.3d 579, 592 (6th Cir. 2018) (erroneous outcome); or (2) if "a similarly-situated member of the opposite sex was treated more favorably than the plaintiff due to his or her gender," *Doe v. Cummins*, 662 F. App'x 437, 452 (6th Cir. 2016) (selective enforcement).

Under the erroneous outcome theory, "a plaintiff must allege: (1) facts sufficient to cast some articulable doubt on the accuracy of the outcome of the disciplinary proceeding and (2) a particularized causal connection between the flawed outcome and gender bias." *Doe v. Miami Univ.*, 882 F.3d at 593 (citations and internal quotations omitted). Plaintiffs' claim fails under this

theory because they do not allege *any facts* showing a causal connection between the outcome of Freedom Prep's decision and gender bias. There is no allegation that the refusal to permit I.H. to return for in-person schooling was on the basis of I.H.'s sex. Rather, Plaintiffs allege that the refusal was based on the Southaven police report regarding IH's potential involvement in a threat to blow up the school and commit suicide.[11] Because Plaintiffs have failed to allege facts establishing a causal connection between the allegedly erroneous decision and gender bias, Plaintiffs' claim under this theory should be dismissed. *See e.g. Doe v. Univ. of Tennessee at Chattanooga*, 2021 WL 4724187, at *2 (E.D. Tenn. Sept. 9, 2021), *appeal dismissed*, 2022 WL 6237083 (6th Cir. Sept. 28, 2022) (dismissing erroneous outcome Title IX claim due to failure to allege connection to gender bias).

For similar reasons, Plaintiffs also fail to state a claim under the selective enforcement theory. Under this theory, a plaintiff must show that "a similarly-situated member of the opposite sex was treated more favorably than the plaintiff due to his or her gender." *Cummins*, 662 F. App'x at 452. Because there is no allegation in the Complaint that similarly situated female students were treated more favorably than I.H. due to his gender, Plaintiffs also failed to state a claim under this theory. *See e.g. Univ. of Tennessee at Chattanooga*, 2021 WL 4724187, at *2 (dismissing "selective enforcement" Title IX claim where allegations were insufficient to establish gender bias). Accordingly, Plaintiffs' Title IX claim is without merit and should be dismissed.

## II. Plaintiffs' Tennessee statutory claims fail as a matter of law.

### A. Plaintiffs' Tennessee Public Records Act claim fails because Plaintiffs are not Tennessee Citizens, and this Court lacks subject matter jurisdiction for such claim.

Plaintiffs brings a claim under the Tennessee Public Records Act ("PRA"), due to Freedom Prep's alleged failure to provide records requested by Plaintiffs concerning Freedom Prep's

---

[11] [Compl. at ¶¶ 20, 38].

"relationship with the Lakeside/ Parkwood Behavioral Health System, including by not limited to all information that allows the school to utilize the services of a school mental health liaison."[12] Section 10-7-505(a) of the PRA, which governs the process for appealing the denial of a request for information, states that "**[a]ny citizen of Tennessee** … whose request has been ... denied ... shall be entitled to petition for access to any such record and to obtain judicial review of the actions taken to deny the access." T.C.A. § 10-7-505(a) (emphasis added). The PRA is clear that these rights are available only to a "citizen of Tennessee." Both the Plaintiffs and I.H. are citizens of Mississippi,[13] not Tennessee, and therefore lack standing to bring a PRA action. *Id.*; s*ee also Jones v. City of Memphis,* 868 F. Supp. 2d 710, 734 (W.D. Tenn. 2012), *aff'd*, 531 Fed. Appx. 709 (6th Cir. 2013) (upholding the constitutionally of the PRA's "Tennessee citizen-only" requirement).

Further, the PRA provides that "such petition **shall be filed in the chancery court or circuit court for the county** in which the ... records sought are situated, **or in any other court of that county** having equity jurisdiction." T.C.A. § 10-7-505(b) (emphasis added). Accordingly, federal courts like this one are without subject matter jurisdiction to consider a petition for judicial review of the denial of a PRA request. *Id*. *See Bunt v. Clarksville Montgomery Cnty. Sch. Sys.*, 2021 WL 1264431, at *14 (M.D. Tenn. Apr. 6, 2021) ("The statute does not authorize federal district courts to consider such petitions."); *United States v. Barnes,* 2016 WL 5108227, at *1–2 (E.D. Tenn. Aug. 22, 2016), *report and recommendation adopted,* 2016 WL 5108087 (E.D. Tenn. Sept. 20, 2016) (federal court lacked jurisdiction to consider Tennessee PRA claim).

B. <u>Plaintiffs' DATA Act claim must be dismissed because there is no private right of action under this statute</u>.

Plaintiffs allege that they have been denied the opportunity to review the entire school

---

[12] [Compl. at ¶ 37].
[13] [Compl. at ¶¶ 9, 10].

record of I.H. for the past school year, in violation of T.C.A. § 49-1-704, *et seq*.[14] This statute, which is part of the "Data Accessibility, Transparency and Accountability Act", T.C.A. §§ 49-1-701, *et seq*. ("DATA Act"), provides in relevant part that "Parents and guardians have the right to inspect and review their children's education records maintained by the school" and that LEAs (local educational agencies) shall provide parents or guardians with a copy of their children's educational records upon request." T.C.A. § 49-1-704(a) and (c).

Plaintiffs' claim under Tenn. Code Ann. § 49-1-704, *et seq*., fails because there is no private right of action under this statute. A plaintiff who asserts that a statute creates a private right of action has the burden to establish that a private right of action exists. *Brown v. Tennessee Title Loans, Inc.*, 328 S.W.3d 850, 856 (Tenn. 2010). The legislative intention to create such a private right may be discerned by the express language of the statute, or by implication. *Id*. at 855.

In the present case, there is no private right of action under the express language of the DATA Act, either in the specific section referenced by the Plaintiffs (T.C.A. § 49-1-704) or elsewhere. To determine whether the legislature otherwise indicated an intention to *imply* such a right, a court considers (1) whether the party bringing the cause of action is an intended beneficiary within the protection of the statute, (2) whether there is any indication of legislative intent, express or implied, to create or deny the private right of action, and (3) whether implying such a remedy is consistent with the underlying purposes of the legislation. *Brown*, 328 S.W.3d 850, 856.

While Plaintiffs may be intended beneficiaries of the DATA Act, that fact alone does not imply a private right of action. *Id*. at 858. Where, as here, there is no indication of legislative intent to create the private right of action, no such right should be implied. *Id.* at 856.[15] In fact, the only

---

[14] [Compl. at ¶ 39].
[15] *See e.g. McAllister v. Lawrence Cnty. Sch. Sys. Bd. of Educ.*, 2022 WL 776700, at *2 (Tenn. Ct. App. Mar. 15, 2022), appeal denied (July 13, 2022) (finding no private of action under T.C.A. §49-1-

portion of the DATA Act referring to remedies (§49-1-708 -- unauthorized disclosure of student information), expressly precludes a private right of action, and instead states that the relevant section "shall be enforced **solely** by the attorney general and reporter in the attorney general's discretion." T.C.A. § 49-1-708(g) (emphasis added).

Plaintiffs also cannot show that implying such a remedy is consistent with the underlying purposes of the legislation. A primary purpose of the DATA Act is to require the Tennessee Department of Education to "develop, publish and make publicly available policies and procedures to comply with FERPA…" T.C.A. § 49-1-703(2). FERPA (the Family Educational Rights and Privacy Act of 1974, 20 U.S.C. § 1232g), is a federal statute which like the DATA Act gives parents and guardians the right to inspect student records.[16] Importantly, it is well-established that there is no private right of action under FERPA. *See Bevington v. Ohio Univ.*, 93 F. App'x 748, 750 (6th Cir.2004) ("[T]here is no private right of action under the FERPA.") (citing *Gonzaga Univ. v. Doe*, 536 U.S. 273, 287 (2002)).

In concluding that there was no FERPA private right of action, the Court in *Gonzaga Univ.* emphasized that the statute focused on the entities regulated--the U.S. Secretary of Education and educational agencies or institutions—and not on the individuals protected under the statute. 536 U.S. at 287. Additionally, the provisions in FERPA concerned institutional policies, rather than individual violations and remedies. *Id*. at 288.

Further, FERPA requires the Secretary to "establish or designate [a] review board" for investigating and adjudicating such violations. *Id*. at 289 *citing* 20 U.S.C. § 1232g(g). Pursuant to

---

302(d)(2)(A), a part of the "First to the Top Act" (FTTTA), where there was no proof of legislative intent to imply a private right of action for non-tenured teachers who have been non-renewed).

[16] 20 U.S.C. § 1232g(a)(1)(A) ("No funds shall be made available … to any educational agency or institution … which effectively prevents, the parents of students … the right to inspect and review the education records of their children.").

these provisions, the Secretary created the Family Policy Compliance Office (FPCO) "to act as the Review Board required under the Act [and] to enforce the Act with respect to all applicable programs." *Id. citing* 34 CFR §§ 99.60(a) and (b). Upon the filing of a complaint, the FPCO will initiate an investigation, notify the educational institution of the charge, and request a written response. *Id. citing* 34 CFR §§ 99.64(a)-(b) and 99.65. If a violation is found, the FPCO distributes a "statement of the specific steps that the agency or institution must take to comply" with FERPA. *Id. citing* 34 CFR §§ 99.66(b) and (c)(1). These administrative procedures distinguished the case from situations where an aggrieved individual lacked any federal review mechanism, and further counseled against finding a congressional intent to create individually enforceable private rights. *Id*. at 289-290.

For similar reasons, there is no implied private right of action under the DATA Act. As with FERPA, the Act is focused on the entities regulated, the Tennessee Department of Education and local educational agencies, and on the development of institutional policies and practices; rather than on individuals benefited by the statute and remedies for individual violations.[17]

Further, if Freedom Prep failed to provide requested records, then under FERPA and the accompanying federal regulations Plaintiffs would have the administrative remedies described in *Gonzaga University*. The fact that there is an available administrative remedy for alleged violations further supports a finding that there is no implied private right of action under the DATA Act. *Gonzaga*, 536 U.S. at 289-290. In fact, if there were a DATA Act private right of action, then there would be duplicative remedies in different forums, with potentially contradictory results. This further supports the absence of an implied private right of action. *See Rogers v. Frito-Lay, Inc.*,

---

[17] *See e.g.* T.C.A. § 49-1-704(c) ("LEAs shall provide parents or guardians with a copy of their children's educational records upon request."); §49-1-704(d)(1) ("The department shall develop a model student records policy for LEAs …").

433 F. Supp. 200, 203 (N.D. Tex. 1977), *aff'd*, 611 F.2d 1074 (5th Cir. 1980) (finding no implied private right of action where such a right could "duplicate available state remedies and substantially increase the possibility of inconsistent judgments by federal courts, federal administrative agencies, state courts, and state administrative agencies.")

For these reasons, the Plaintiffs cannot show a private right of action under the DATA Act, and therefore any alleged claims thereunder should be dismissed.

### III.     Plaintiffs' claim for intentional infliction of emotional distress should be dismissed.

The Plaintiffs' claim of intentional infliction of emotional distress ("IIED") should be dismissed (A) because the School is immune from such claims pursuant to the Tennessee Government Tort Liability Act ("GTLA"), T.C.A. § 29–20–101 *et seq.*, or (B) in the alternative, because the allegations are insufficient to state an IIED claim under Tennessee law.

A.  Plaintiffs' IIED claim is barred under GTLA.

The GTLA removes the immunity of governmental entities for the negligent acts and omissions of employees acting within the scope of their employment, "**except** if the alleged injury arises out of: … [f]alse imprisonment pursuant to a mittimus from a court, false arrest, malicious prosecution, intentional trespass, abuse of process, libel, slander, deceit, interference with contract rights, **infliction of mental anguish**, invasion of right of privacy, or civil rights." Tenn. Code Ann. § 29-20-205(2) (emphasis added). Consequently, GTLA "immunizes [governmental entities] from suits for 'intentional infliction of emotional distress.'" *Johnson v. South Cent. Human Res. Agency*, 926 S.W.2d 951, 952–53 (Tenn.Ct.App.1996). *See also Olivier v. City of Clarksville*, 2017 WL 3535016, at *5 (Tenn. Ct. App. 2017).

Freedom Prep was established pursuant to the Tennessee Public Charter Schools Act of 2002 T.C.A. §§ 49-13-101 *et seq.* (the "Public Charter Schools Act"), as a "public charter school"

10

which is defined as "a public school in this state that is established and operating under the terms of a charter agreement and in accordance with [the Public Charter Schools Act]." T.C.A. § 49-13-104(12). Under that Act, "[t]he governing body of a charter school shall be subject to the same limits of liability as local school systems." T.C.A. § 49-13-125. Pursuant to GTLA, local school systems are immune from actions for intentional infliction of emotional distress. *Autry v. Hooker*, 304 S.W.3d 356, 364 (Tenn. Ct. App. 2009) (holding that local school district, school board and other school officials were immune from IIED claims pursuant to GTLA). Thus, Defendants are immune from the Plaintiffs' IIED claim, which should therefore be dismissed.

    B.  <u>The allegations in the Complaint fail to state an IIED claim</u>.

Alternatively, the allegations in the Complaint are insufficient to state an IIED claim. To prove a claim for IIED, Plaintiffs must show that: (1) the conduct complained of was intentional or reckless, (2) it was so outrageous that it is not tolerated by a civilized society, and (3) it resulted in serious mental injury. *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn.1997). Importantly, outrageous conduct does not include "mere insults, indignities, threats, annoyances, petty oppression or other trivialities." *Id*. Further, "[i]t has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort." *Id*. at 623 (quoting Restatement (Second) of Torts § 46 comment d (1965)). "Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Id*.

    Plaintiffs rely on the following allegations to support their IIED claim:

> In committing and performing the foregoing detailed acts, Superintendent Barber as a representative of the Defendant Freedom Preparatory Academy acted

11

> intentionally and/or recklessly toward I.H. barring him from school without a reasonable basis in law or fact, requiring a clearance from Southaven Police Department to return to school and preventing him from attending classes throughout most of his 11th grade year based on falsehoods, failure to adequately investigation the facts and failure to conduct any follow-up evaluation to determine how I.H. has been fairing academically since his expulsion from classes.
>
> Barber's and Freedom Prep's conduct was so outrageous it is not tolerated in civilized society.
>
> Plaintiff, I.H., has suffered serious emotional injury as a result of Barber's conduct as an agent and representative of Defendant, Freedom Prep Academy and the lack of intervention by the Board of Directors to prevent the harm from occurring to his reputation and educational health.[18]

As illustrated below, these allegations are insufficient to show the "outrageous", "atrocious" and "utterly intolerable" conduct necessary to state an IIED claim.

This case is similar to *Runions v. Tennessee State University*, 2009 WL 1939816 (Tenn.Ct.App. July 6, 2009) and to *Goldfarb v. Baker*, 547 S.W.2d 567 (Tenn. 1977), both of which involved IIED claims in the context of a school's removal of a student. The plaintiff in *Runions*, a student in the School of Nursing, was notified by the university that she would be removed from the program due to a low grade in one of the classes. The student appealed and was informed by a university official that her appeal was granted. 2009 WL 1939816 at *1. Upon entering the classroom on the first day of the following semester, the plaintiff was physically grabbed by the instructor and forcibly removed from the classroom. She was later informed by the same official who had granted the appeal, that the decision had been reversed and that she had been removed from the program. *Id*. at *2.

The plaintiff sued the university bringing an IIED claim and alleging that the events "caused her to suffer great mental anguish, embarrassment and emotional distress, and that she has had to undergo professional counseling as a result." *Id*. The trial court dismissed the claim and the

---

[18] [Compl. at ¶¶ 42-44].

12

Court of Appeals affirmed on the grounds that the alleged conduct was not sufficiently "outrageous" to support an IIED claim. The Court explained:

> Ms. Runions is understandably unhappy that she was expelled from TSU's nursing program and that her goal of earning a nursing degree has been frustrated. However, neither the administrators' decision to expel her from the program because of her grades nor the instructor's action in physically removing her from the classroom meets the exacting standard for recovery on a claim of outrageous conduct or intentional infliction of emotional distress.

*Id*. at *6.

In *Goldfarb v. Baker*, another similar case, an unidentified prankster threw a pie at a university professor, hit the target, and then ran away. The angered professor immediately accused one of his students of the assault. The next day, the professor forbade the student to attend class, had him ejected from the building when he attempted to take his seat, and in the presence of others accused him of blackmail. 547 S.W.2d at 568.

The student, a former state prisoner, sued for outrageous conduct alleging he was falsely portrayed as a lawless individual whose attempted rehabilitation had failed, that he lost the confidence of his associates, and was frustrated in his effort to reform his life. *Id*. He claimed that he was innocent of any wrongdoing and that the professor's actions had caused him "extreme mental anguish, humiliation, depression and distress." *Id*. The trial court dismissed the complaint, finding that the professor's alleged conduct was not sufficiently outrageous to be actionable. The Tennessee Supreme Court affirmed, noting that "[t]he facts alleged in the complaint do, indeed, constitute a misfortune for the plaintiff" but such facts were not sufficiently egregious to establish a claim of outrageous conduct. *Id*. at 569.

In the present case, I.H. was taken into custody by the Southaven Police Department for allegedly calling the suicide hotline during the school day and threatening to "blow his school up"

13

and to "harm himself."[19] Since receiving the report from the Southaven Police Department, Freedom Prep has not allowed I.H.to return in person until there is a clearance from the Southaven Police and/or a "statement from a mental health therapist."[20] As in *Runions* and *Goldfarb*, the facts alleged here may be unfortunate for the Plaintiffs, especially if, as he alleges, he is not guilty of any wrongdoing. However, the alleged conduct is not sufficiently "outrageous" or "utterly intolerable" so as to support a claim of intentional infliction of emotional distress. Accordingly, Plaintiffs' IIED should be dismissed. *Goldfarb*, *supra*.; *Runions*, *supra*.

**IV.     Plaintiffs' requests for injunctive relief and punitive damages should be denied.**

Because there is no merit in the Plaintiffs' underlying claims as explained above, the Plaintiffs' requests for injunctive relief and for punitive damages[21] should be denied *See Brown v. U.S. Bank Nat'l Ass'n*, 2013 WL 12049109, at *7 (W.D. Tenn. Nov. 21, 2013) (dismissing claims for injunctive relief when the underlying causes of action failed to state a claim); *Spencer v. City of Hendersonville*, 487 F. Supp. 3d 661, 675 (M.D. Tenn. 2020), *aff'd sub nom. Spencer v. City of Hendersonville, TN*, No. 20-6168, 2021 WL 8016828 (6th Cir. Oct. 8, 2021) (finding claims for punitive damages were rendered moot upon dismissal of underlying claims).

**V.     Defendants are entitled to an award of fees on the Title IX claim.**

Because the allegations of the Complaint with regard to Title IX are so utterly baseless, Defendants are entitled to an award of fees incurred for the defense of Plaintiffs' Title IX claim, pursuant to Section 1988 of Title 42 which provides that "[i]n any action or proceeding to enforce ... title IX of Public Law 92–318 ..., the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as a part of the costs." 42 U.S.C. § 1988(b).

---

[19] [Compl. at ¶¶ 15, 16].
[20] [Compl. at ¶¶ 20, 38].
[21] [Compl., Prayer for Relief g. and h. at pp. 10, 11].

14

With regard to Section 1988, the Sixth Circuit has stated:

> An award of attorney's fees against a losing plaintiff in a civil rights action is an extreme sanction, and must be limited to truly egregious cases of misconduct. The Supreme Court has indicated that:
>
>> a plaintiff should not be assessed his opponent's attorney's fees unless a court finds that his claim was frivolous, unreasonable or groundless ... [a]nd, needless to say, if a plaintiff is found to have brought or continued such a claim in bad faith, there will be an even stronger basis for charging him with attorney's fees incurred by the defense.

*Jones v. Cont'l Corp.*, 789 F.2d 1225, 1232 (6th Cir. 1986) *citing Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 422 (1978).

Defendants submit that the Plaintiffs' Article IX claim was "frivolous, unreasonable or groundless" as there was no evidence or even allegation of adverse action "on the basis of sex" which is *the* essential requirement for a Title IX claim. 20 U.S.C. § 1681(a). *See also Doe on behalf of Doe #2 v. Metro. Gov't of Nashville & Davidson Cnty., Tennessee*, 35 F.4th 459, 466 (6th Cir. 2022) (referring to Title IX's purpose as "eliminating systemic gender discrimination from federally funded schools"). For this reason, an award of fees to Defendants for defense of this claim is warranted. *See Nguyen v. Regents of the Univ. of Cal.,* 823 Fed. App'x. 497, 503 (9th Cir. 2020) (finding no abuse of discretion where district court awarded fees after the unsuccessful plaintiff failed to produce evidence of a prima facie case for Title IX claim despite fourteen months of discovery); *EEOC v. IPCO Hospital Supply Co.*, *Dental Prosthetics Div.,* 565 F Supp. 134, 135 (S.D.N.Y. 1983) (awarding fees to the prevailing defendant in a racial discrimination action under Title VII where the implausibility of the employment discrimination complaint should have been apparent on the agency's first encounter with the complainant).

Alternatively, Defendants are entitled to an award of fees from Plaintiffs' attorney pursuant to 28 U.S.C. § 1927, which authorizes a court to assess fees against an attorney for "unreasonable

15

and vexatious" multiplication of litigation. "[W]hen an attorney knows or reasonably should know that a claim pursued is frivolous, or that his or her litigation tactics will needlessly obstruct the litigation of nonfrivolous claims, a trial court does not err by assessing fees attributable to such actions against the attorney." *Jones v. Cont'l Corp.*, 789 F.2d at 1230. In the present case, Plaintiffs' counsel knew or reasonably should have known that a Title IX claim was frivolous with no evidence (or even allegations) of adverse action on the basis of sex. An award of fees is therefore warranted in the present case.

## CONCLUSION

For the reasons set forth above, Plaintiffs' claims must be dismissed under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim and Defendants should be awarded their reasonable costs and attorneys' fees pursuant 42 U.S.C. § 1988 for defending against Plaintiff's frivolous Title IX claim.

> s/ Lisa A. Krupicka
> Lisa A. Krupicka (BPR No. 12147)
> Carl I. Jacobson (BPR No. 10504)
> BURCH, PORTER & JOHNSON, PLLC
> 130 North Court Avenue
> Memphis, TN 38103
> T:  (901) 524-5000
> F:  (901) 524-5024
> lkrupicka@bpjlaw.com
> cjacobson@bpjlaw.com
>
> *Attorneys for Defendants*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing pleading was served upon counsel for Plaintiff via the Court's CM/ECF filing system, this the 29th day of August, 2023.

> s/ Lisa A. Krupicka