IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
AT MEMPHIS

| | |
|---|---|
| DABNEY and PAMELA HAMMER, Parents and Next Friends of I.H., </br></br>Plaintiffs, </br></br>v. </br></br>FREEDOM PREPARATORY ACADEMY CHARTER SCHOOL, </br></br>Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) Case No. 2:23-cv-02393-JTF-tmp |

**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS; DENYING PLAINTIFFS' MOTION TO AMEND COMPLAINT**

Before the Court are two Motions. First is Defendant Freedom Preparatory Academy and Board of Directors' Motion to Dismiss for Failure to State a Claim, filed on August 29, 2023. (ECF No. 9.) Plaintiffs Pamela and Dabney Hamner filed their Response on October 11, 2023. (ECF No. 13.) Second is Plaintiffs' First Motion to Amend Complaint, filed on October 11, 2023. (ECF No. 12.) Defendant filed its Response on October 25, 2023. (ECF No. 19.) For the reasons set forth below, Defendant's Motion to Dismiss is **GRANTED**, and Plaintiffs' Motion to Amend Complaint is **DENIED** as futile. The Court **DECLINES** to award Defendant fees.

### I. FACTUAL BACKGROUND

This case involves claims of violations of the right to an education, the Tennessee Records Act, and intentional infliction of emotional distress based on a series of events that have resulted in a high school student being effectively barred from returning to school. Plaintiffs' son, ("I.H.") is a student in the 12th grade who had been attending Freedom Preparatory Academy since 2018. (ECF No. 1, 4.) Plaintiffs and I.H. live in Southaven Mississippi, but commuted to Memphis,

1

Tennessee to attend Freedom Preparatory Academy, due to the charter school's reputation as a STEM Program geared toward African American students. (*Id.* at 5.) Up until the events giving rise to this suit during his junior year, I.H. was a good student and did not have a significant school disciplinary record. (*Id.* at 4.)

On February 6, 2023, I.H.'s mother ("Hamner") received a call from persons claiming to be from the Southaven Police Department, advising her that I.H. had made terroristic threats toward his school, and had called a suicide hotline threatening to harm himself. (*Id.* at 5.) Accordingly, the caller advised Hamner to return home, and informed her that I.H. would be taken into custody. (*Id.*) Hamner was met at her home by three uniformed Southaven Police Officers and two unmarked cars. (*Id.*) I.H. was in the back of a marked police vehicle. (*Id.*) The officers once again told Hamner that her son had called the suicide hotline and threatened to blow up the school during the school day. (*Id.*)

The Officers demanded that Plaintiffs surrender I.H.'s phone, which they ultimately did after the Officers threatened to get a search warrant to search their home. (*Id.*) I.H. was then transported to the Desoto County Juvenile Detention Facility, despite his insistence that he did not make the calls, and allegation that he had been "swatted."[1] (*Id.*) The Southaven Police Department searched I.H.'s phone and found that he made three calls on the day of his arrest, none of which were to a suicide hotline.[2] (*Id.* at 6.) No call attributable to I.H. has been documented to date. (*Id.* at 5.) I.H. left the detention facility after three days. (*Id.* at 6.)

---

[1] A swatting attack involves a situation where a prank call is made to law enforcement in order to dispatch a large number of officers to a targeted individual. *See, e.g., Kimberlin v. Frey*, No. GJH-13-3059, 2017 WL 3141909, at *3 (D. Md. July 21, 2017), aff'd, 714 F. App'x 291 (4th Cir. 2018).
[2] Plaintiffs believe that two individuals I.H. had met online made the call after tricking him into divulging personal details about himself. (*Id.* at 6-7.)

2

The Southaven Police Department also contacted I.H.'s school, Freedom Preparatory Academy and informed the principal of the alleged threats, I.H.'s arrest and detention in a juvenile detention facility. (*Id.*) Based on this information, the school prevented I.H. from returning to campus. (*Id.*) Plaintiffs met with the Superintendent on February 8, 2023, who informed them that I.H. could not return unless he presented a statement from a mental health therapist. (*Id.*) He also stated that for I.H. to be permitted to resume attending class in person, he would not be able to drive to campus, bring a telephone, or participate in any after school activities. (*Id.*) These restrictions remain despite a determination that I.H. did not make the threatening calls. (*Id.* at 6.) I.H. has not returned to Freedom Preparatory Academy since the incident. (*Id.*)

Plaintiffs have asked for, and been denied, the ability to review or receive a copy of school records or policies supporting their refusal to permit I.H. to attend the school without the restrictions. (*Id.* at 7.) Freedom Preparatory Academy does not have policies concerning Student Discrimination, Harassment, Bullying, Cyberbullying, and Intimidation published on its website. (*Id.*)

## II.  PROCEDURAL HISTORY

Based on the events described above, Plaintiffs brought this action on June 28, 2023. (ECF No. 1.) Therein they allege sex discrimination under Title IX of the Education Amendments of 1972 ("Title IX"), 20 U.S.C § 1681, *et seq*,; violation of the Tennessee Public Records Act, T.C.A. §49-1-704 et *seq*, ("Public Records Act"); violation of T.C.A. § 49-1-704, a part of the Data Accessibility, Transparency and Accountability Act, T.C.A. §§ 49-1-701, *et seq*. ("DATA Act"); and intentional infliction of emotional distress under Tennessee state law. (*Id.* at 7-10.)

Defendant filed its Motion to Dismiss on August 29, 2023. (ECF No. 9.) In their Motion, Defendant first argues that Plaintiffs do not state a sexual discrimination claim, which is necessary

to sustain a Title IX action. (*Id.* at 4-5.) Second, they maintain that both of Plaintiffs' statutory claims fail because (1) Plaintiffs are Mississippi residents and the Tennessee Public Records Act only gives Tennessee residents the right to records, and (2) the portion of the Tennessee DATA Act Plaintiffs invoke does not create a private right of action. (*Id.* at 5-10.) Third, Defendant asserts that Plaintiffs' intentional infliction of emotional distress claim fails because they are either immune from such claims under the Tennessee Government Tort Liability Act ("GTLA"), T.C.A. § 29–20–101 *et seq*., or in the alternative, Plaintiffs' allegations are insufficient to state an IIED claim under Tennessee law. (*Id.* at 10-14.) Fourth, they argue that injunctive relief and punitive damages should be denied because the underlying claims are without merit. (*Id*. at 14.) Fifth, Defendant contends that it is entitled to an award of fees incurred for the defense against Plaintiffs' Title IX pursuant to 42 U.S.C. § 1988(b), because the claim is frivolous. (*Id.* at 14-15.)

Plaintiffs responded to Defendant's Motion on October 11, 2023. (ECF No. 13.) In their Response, Plaintiffs argue that they have plausibly pleaded their Title IX and IIED claims. (*Id.* at 7.) Plaintiffs also concede that their Tennessee Public Records Act and the Tennessee DATA Act are without merit and seek to withdraw them. (*Id.* at 1-2.)

Plaintiffs filed a Motion to Amend contemporaneously with their Response. (ECF No. 12.) In their Motion to Amend, Plaintiffs seek to remove the allegations under the Tennessee Public Records Act and make minor changes to their Title IX claim. (ECF No. 12-1, 2.) Plaintiffs also seek to add a § 1983 claim, stating that the "original Complaint already alleged the entire factual basis for adding the proposed claims under § 1983" and so they are now only "formaliz[ing] [these] allegations into identifiable causes of action for these violations of the civil rights of I.H." (*Id.*) On October 25, 2023, Defendant responded, arguing that leave to amend should be denied the proposed amendments are futile. (ECF No. 19.) Defendant contend that the Title IX and IIED

4

claims are still meritless even with the proposed amendments, and Plaintiffs' proposed § 1983 claim cannot withstand a Motion to Dismiss. (*Id.* at 4.)

### III. LEGAL STANDARDS

#### A. Motion to Dismiss

When evaluating a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012) (The court must "construe the complaint in the light most favorable to the plaintiff and accept all allegations as true."). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. In other words, although the complaint need not contain detailed facts, its factual assertions must be substantial enough to raise a right to relief above a speculative level. *Ass'n of Cleveland Fire Fighters v. City of Cleveland,* 502 F.3d 545, 548 (6th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). However, "'naked assertions devoid of further factual enhancement' contribute nothing to the sufficiency of the complaint." *16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 506 (6th Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678). Determining whether a complaint states a plausible claim is "context-specific," requiring the Court to draw upon its experience and common sense. *Iqbal*, 556 U.S. at 679. Defendants bear the burden of "proving that no claim exists." *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross and Blue Shield*, 552 F.3d 430, 433 (6th Cir. 2008).

#### B. Motion to Amend

In relevant part, Federal Rule of Civil Procedure 15 allows a party to amend a pleading once as a matter of course within 21 days after service. Fed. R. Civ. P. 15(a)(1)(A). After this first

amendment as of right, a party must receive either the opposing party's written consent or leave of court to amend the pleading again. *Id.* 15(a)(2). Courts should grant leave to amend freely "when justice so requires," and the Sixth Circuit has previously listed factors to guide this determination:

> Undue delay in filing, lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendment are all factors which may affect the decision. Delay by itself is not sufficient reason to deny a motion to amend. Notice and substantial prejudice to the opposing party are critical factors in determining whether an amendment should be granted.

*Wade v. Knoxville Utils. Bd.*, 259 F.3d 452, 458-59 (6th Cir. 2001) (quoting *Head v. Jellico Hous. Auth.*, 870 F.2d 1117, 1123 (6th Cir. 1989)). A proposed amendment is futile if it would not withstand a motion to dismiss. *Gooding v. EquityExperts.org, LLC*, No. 17-12489, 2020 WL 13441663, at *1 (E.D. Mich. Jan. 9, 2020) (citing *Thiokol Corp. v. Dep't of Treasury, State of Mich. Revenue Division*, 987 F.2d 376 (6th Cir. 1993)).

## IV.    ANALYSIS

Plaintiffs assert claims for sex discrimination under Title IX, IIED, and a violation of Plaintiffs' privacy rights under the Family Educational Rights and Privacy Act of 1974 based on Defendant's treatment of I.H. after he was mistakenly identified as the caller who made the threat. (*See generally* ECF Nos. 1 & 12-3.) Defendant argues that Plaintiffs' claims are meritless, and demand fees incurred in the defense of Plaintiffs' Title IX claim. (ECF Nos. 9-1 & 19.) The Court now considers whether Plaintiffs' currently operative complaint or proposed amended complaint can withstand the motion to dismiss. Because Plaintiffs submit that they have voluntarily withdrawn their Public Records Act and DATA Act claims, the Court finds that Defendant's Motion to Dismiss is **MOOT** with respect to both.

### A. Title IX

#### i.     Title IX Claim as Alleged in the Initial Complaint

Plaintiffs contend that the school's refusal to allow I.H. to return to school without any restrictions is a violation of Title IX. (ECF No. 1, 8.) Title IX provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). The Sixth Circuit has followed the Second Circuit in identifying two different theories under which a plaintiff may bring a Title IX action related to student-disciplinary proceedings: "erroneous outcome" and "selective enforcement." *Doe v. Cummins*, 662 F. App'x 437, 451 (6th Cir. 2016) (citing *Yusuf v. Vassar College*, 35 F.3d 709, 715 (2d Cir. 1994)). The Court considers the applicability of both theories below because Plaintiffs have not explicitly pleaded either.

To plead an erroneous outcome claim, a plaintiff must allege facts sufficient to: (1) "cast some articulable doubt on the accuracy of the outcome of the disciplinary proceeding" and (2) demonstrate a "particularized . . . causal connection between the flawed outcome and gender bias." *Doe v. Miami Univ.*, 882 F.3d 579, 593 (6th Cir. 2018) (alterations in original) (citations and internal quotations omitted). Causation sufficient to state a Title IX discrimination claim can be shown via "statements by members of the disciplinary tribunal, statements by pertinent university officials, or patterns of decision-making that also tend to show the influence of gender." *Cummins*, 662 F. App'x 437, 452 (6th Cir. 2016) (quoting *Yusuf*, 35 F.3d at 715). Under this standard, "allegations of a procedurally or otherwise flawed proceeding that has led to an adverse and erroneous outcome combined with a conclusory allegation of gender discrimination is not sufficient to survive a motion to dismiss." *Id.*

Defendant does not appear to be disputing whether Plaintiffs have alleged facts sufficient to cast articulable doubt on the accuracy of the disciplinary proceedings. For this reason, the Court

focuses on the causation element. Defendant points out that Plaintiffs' Complaint does not allege facts establishing a causal connection between the allegedly erroneous decision and gender. (ECF No. 9-1, 5.) In their Response, Plaintiffs make two claims that could be construed as allegations of a causal connection. First, they state that "[i]t is well documented that African American students and particularly males are disciplined more frequently and more harshly than students of other races or genders."[3] (ECF No. 13, 3.) Second, they aver that "Freedom Prep impeded the education of I.H., based on his gender (male) and unfounded accusations of terrorism." (*Id.* at 4.) The Court finds that neither of the two assertions, alone or together, allege sufficient factual matter to establish a causal link between I.H.'s gender and the school's decision to not let him return to class without restrictions. The first statement regarding the documented trend of African American male students being disciplined more harshly than students of other races and genders states a general conclusion that, if true, would have no bearing on the issue of whether Defendant discriminated against I.H. based on his gender. The second statement is a conclusory allegation of gender discrimination. Hence, the Court finds that Plaintiffs have not plausibly pleaded a Title IX claim that can withstand Defendant's Motion to Dismiss under this theory.

Next, to make out a Title IX selective enforcement claim, a plaintiff must show that "a similarly situated member of the opposite sex was treated more favorably than the plaintiff due to his or her gender." *Cummins*, 662 F. App'x at 452. Defendant points out the Complaint does not allege that similarly situated female students were treated more favorably than I.H. due to his

---

[3] Notably, Plaintiffs' supporting citation is a public letter from the U.S. Department of Education providing guidance on how schools can administer student discipline without discriminating based on *race*, not gender. See, Civil Rights Div., U.S. Dep't of Educ. & Office for Civil Rights, U.S. Dep't of Justice, Dear Colleague Letter on the Nondiscriminatory Administration of School Discipline, (November 30, 2023), https://www2.ed.gov/about/offices/list/ocr/letters/colleague-201401-title-vi.html#note4.

8

gender. (ECF No. 9-1, 5.) Plaintiffs do not respond to this argument in their Response. The Court finds that Plaintiffs have failed to state a Title IX claim under the selective enforcement theory.

Because Plaintiffs have failed to state a claim under either applicable theory, their Title IX claim is **DISMISSED**.

### ii.  Proposed Amendments to Title IX Claim

To reiterate, Plaintiffs' Title IX claim fails as initially pleaded because they did not (1) allege a causal connection between the school's allegedly erroneous decision to bar I.H. from returning to school and his gender; and/or (2) show that a similarly situated female student was treated more favorably than I.H. due to his gender. *See supra* IV.A.i. In their proposed First Amended Complaint, Plaintiffs seek to cure these deficiencies by including the following:

> 37. Freedom Prep Academy has treated female students in a different manner than it treats male students accused of the same offense or perceived offenses based on sex.
> 38. Male students at Freedom Prep Academy are routinely disciplined, suspended or ultimately dismissed from the school for actions that female students have engaged in.

(ECF No. 12-3, 9.) Turning first to the erroneous outcome theory, Defendant recites Sixth Circuit precedent that causation sufficient to state a Title IX claim under the erroneous outcome theory is shown by "statements by members of the disciplinary tribunal, statements by pertinent university officials, or patterns of decision-making that also tend to show the influence of gender." *Cummins*, 662 F. App'x 437, 452 (6th Cir. 2016) (quoting *Yusuf*, 35 F.3d at 715). Neither of Plaintiffs' proposed amendments sets forth statements by members of the disciplinary tribunal or by pertinent school officials. While it is true that the amendments do allege patterns of decision-making that tend to show the influence of gender, they are vague and conclusory. *See Z.J. v. Vanderbilt Univ.*, 355 F. Supp. 3d 646, 682 (M.D. Tenn. 2018) ("[C]onclusory allegations of gender bias, unsupported by even minimal data, credible anecdotal references, or the purported

9

presence of specific external pressures, are insufficient to support a plausible erroneous outcome claim."). Plaintiffs' erroneous outcome claim still fails to state a claim.

The proposed amendments are also insufficient relative to Plaintiffs' Title IX claim under the selective enforcement theory. Neither amendment alleges that a similarly situated female student was punished less harshly than I.H. The Sixth Circuit has made clear that to make this showing, a plaintiff must identify a comparator of the opposite sex who was treated more favorably by the same educational institutional when facing similar disciplinary charges. *See Cummins*, 662 F. App'x at 452. Plaintiffs have not identified any such individual; they instead rely on a general assertion that male students at Freedom Preparatory Academy are routinely disciplined for actions that female students have engaged in. (*See* ECF No. 12-3, 9.) Because Plaintiffs have failed to allege that the school did not discipline a female student for conduct that was substantially similar to that which was mistakenly attributed to I.H., they still fail to state a claim under the selective enforcement theory.

Plaintiffs' proposed amendments to their Complaint do not save or revive their Title IX claim under either theory. Granting leave to amend would therefore be futile. For this reason, Plaintiff's Motion to Amend their Complaint is **DENIED** as to their Title IX claim.

### B. Intentional Infliction of Emotional Distress

Next, Plaintiffs assert that Defendant's barring I.H. from returning to school without a basis in law or fact, requiring a police clearance, and preventing him from attending class amount to intentional infliction of emotional distress. (ECF No. 1, 9-10.) They contend that the school's conduct was so outrageous as to not be tolerated in civilized society, and caused I.H. to suffer serious emotional injury. (*Id.* at 10.) In their Motion to Dismiss, Defendant contends that Plaintiffs have failed to state an IIED claim because: (1) the claim is barred under the Tennessee Government

10

Tort Liability Act ("GTLA"); or (2) Plaintiffs have failed to allege facts showing the existence of an IIED. (ECF No. 9-1, 11.) The Court only addresses Defendant's GTLA argument because it concludes that this completely forecloses Plaintiffs' IIED claim, and analysis of the second argument would likely exceed the scope of its review for a Rule 12(b)(6) motion.

The GTLA removes the immunity of governmental entities for the negligent acts and omissions of employees acting within the scope of their employment, "except if the alleged injury arises out of: … [f]alse imprisonment pursuant to a mittimus from a court, false arrest, malicious prosecution, intentional trespass, abuse of process, libel, slander, deceit, interference with contract rights, *infliction of mental angu*ish, invasion of right of privacy, or civil rights." Tenn. Code Ann. § 29-20-205(2) (emphasis added). Courts have held that under the GTLA, governmental entities are immune from suit for intentional infliction of emotional distress. *See Cleaborn v. Shelby Cnty. Bd. of Educ.*, No. 18-2603-JPM-DKV, 2019 WL 13414488, at *3 (W.D. Tenn. Mar. 26, 2019), objections overruled sub nom. *Cleaborn v. Gentry*, No. 2:18-CV-2603-JPM-DKV, 2019 WL 2267312 (W.D. Tenn. May 28, 2019) (collecting cases); *see also Sallee v. Barrett*, 171 S.W.3d 822, 829 (Tenn. 2005) (holding that "infliction of mental anguish" includes the intentional tort of IIED); *Autry v. Hooker*, 304 S.W.3d 356, 364 (Tenn. Ct. App. 2009) (holding that local school district, school board and other school officials were immune from IIED claims pursuant to GTLA).

Defendant argues that it is covered by the GTLA—and are therefore immune from suit for Plaintiffs' IIED claim—because the school was established pursuant to the Tennessee Public Charter Schools Act of 2002 T.C.A. §§ 49-13-101 *et seq.* (ECF No 9-1, 10.) Under the Act, "[t]he governing body of a charter school shall be subject to the same limits of liability as local school systems." Tenn. Code Ann. § 49-13-125. Plaintiffs do not address this argument in their Response

11

to Defendant's Motion to Dismiss, and the alterations to this claim in the proposed Amended Complaint do not set forth any additional facts or case law responsive to Defendant's GTLA immunity argument. (*See* ECF No. 12-3, 10-11.)

The Court finds that Defendant has established that it is covered by the GTLA, and that the GLTA provides governmental entities with immunity from suit for intentional torts like the IIED claim alleged here. Accordingly, Plaintiffs' IIED claim is **DISMISSED** and leave to amend the IIED claim is **DENIED**.

### C. Section 1983

In their proposed Amended Complaint, Plaintiffs assert a new cause of action against the school pursuant to 42 U.S.C. § 1983. (ECF No. 12-3, 9-10.) They allege that the school violated I.H.'s rights under the Family Educational Rights and Privacy Act of 1974, 20 U.S.C. §1232(g) ("FERPA") by providing his personal information to the Southaven Police Department. (*Id.* at 10.) Moreover, Plaintiffs state that this violation of FERPA constitutes "an unlawful requirement to educational access and a denial of the rights of I.H. parents and is in violation of the law." (*Id.*) Defendant argues that granting leave to amend to add this claim would be futile because (1) the school was not acting under color of state law; and (2) Plaintiffs have failed to plausibly allege a deprivation of their Constitutional or statutory rights. (ECF No. 19, 7.) The Court considers both arguments below.

To state a plausible claim for relief under Section 1983, a claimant must allege facts demonstrating that a defendant both: (1) "violat[ed] a right secured by the Constitution and law of the United States" (2) while "acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). In general, "[a] plaintiff may not proceed under § 1983 against a private party 'no matter how discriminatory or wrongful' the party's conduct." *Tahfs v. Proctor*, 316 F.3d 584, 591 (6th Cir. 2003) (citing *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999)). "Nevertheless,

12

there are circumstances under which private persons may, by their actions, become 'state actors' for § 1983 purposes." *Id.* To determine whether a private person can be held liable as a state actor under Section 1983, the Sixth Circuit has recognized three tests: the public function test, the state compulsion test, and the nexus test. *See Memphis, Tenn. Area Local, Am. Postal Workers Union, AFL-CIO v. City of Memphis*, 86 F. App'x 137, 143 (6th Cir. 2004).

### i.     Family Education Rights Protection Act

Plaintiffs base their § 1983 claim on the school's alleged violation of the Family Educational Rights and Privacy Act of 1974, 20 U.S.C. §1232(g) ("FERPA"). (ECF No. 12-3, 10.) They contend that this provision "allows parents the right to request and review educational records maintained by the school and prohibits schools from releasing information improperly and without notice to parents." (*Id.*) Plaintiffs allege that Defendant violated this statute by failing to produce information related to the school's relationship with "Lakeside/Parkwood Behavioral Health System," and by sharing information regarding I.H. to the Southaven Police Department. (*Id.*) Defendant argues that Plaintiffs cannot proceed with their § 1983 claim because FERPA does not set forth a private right of action. (ECF No. 19, 11.)

The Supreme Court addressed this issue in *Gonzaga Univ. v. Doe* and concluded that "there is no question that FERPA's nondisclosure provisions fail to confer enforceable rights." 536 U.S. 273, 287 (2002); *see also Bevington v. Ohio Univ.*, 93 F. App'x 748, 750 (6th Cir. 2004) ("[Plaintiff's] FERPA claim was properly dismissed because there is no private right of action under the FERPA."). Plaintiffs do not point to any contrary authority, and the Court finds that existing precedent makes clear that they cannot sue under FERPA.

### ii.    State Action Doctrine

In lieu of a rigorous state analysis, Plaintiffs submit that "[b]y doing the bidding of the Southaven Police Department or any judicial entity ordering investigation into I.H., Freedom

13

[Prep] Academy has become effectively a 'state actor' subject to liability under 42 U.S.C. § 1983." (ECF No. 12-3, 10.) Defendant indicates that courts across the country, as well as the Sixth Circuit, have concluded that furnishing information to the police by itself does not make someone a state actor under § 1983. See *Moldowan v. City of Warren*, 578 F.3d 351, 399 (6th Cir. 2009) ("Providing information to the police, responding to questions about a crime, and offering witness testimony at a criminal trial does not expose a private individual to liability for actions taken "under color of law."). Given this precedent, Plaintiffs have not shown that Defendant is a state actors for the purposes of § 1983.

In conclusion, the Court finds that Plaintiffs cannot enforce FERPA under § 1983, and they have failed to show that Defendant are state actors.[4] Granting leave to amend to add this claim would therefore be futile. The Motion to Amend Complaint is **DENIED** as to Plaintiffs' § 1983 claim.

**D. Fees**

Defendant seeks an award of fees incurred in the defense of Plaintiffs' Title IX claim in both their Motion to Dismiss as well as their Response to Plaintiffs' Motion to Amend. (ECF Nos. 9-1, 14 & 19, 17.) They contend that fees are warranted under either 42 U.S.C. § 1988(b) or 28 U.S.C. § 1927 because the Title IX claim was frivolous as Plaintiffs failed to set forth evidence or an allegation that the adverse action was "on the basis of sex." (*Id.* at 14-16 (quoting 20 U.S.C. § 1681(a).)

---

[4] It appears that the parties' briefings have generally understated the legal complexities and controversy surrounding the state action doctrine as applied to charter schools. *Compare Caviness v. Horizon Cmty. Learning Ctr., Inc.*, 590 F.3d 806, 815 (9th Cir. 2010) (holding that a charter school is not a state actor in the context of a due process-related employment lawsuit) *with Peltier v. Charter Day Sch., Inc.*, 37 F.4th 104, 116-23 (4th Cir. 2022), cert. denied, 143 S. Ct. 2657 (2023) (en banc) (holding that a charter school was a state actor in the context of an equal protection challenge to a school's sex-based dress code). The Court finds it unnecessary to wade into this controversy because it need not do so in order to resolve the issues that the Parties have raised.

Section 1988 of Title 42 provides that "[i]n any action or proceeding to enforce ... Title IX of Public Law 92–318 ..., the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as a part of the costs." 42 U.S.C. § 1988(b). The Sixth Circuit previously considered the circumstances under which a prevailing party may recover under Section 1988 of Title 42 and held that:

> An award of attorney's fees against a losing plaintiff in a civil rights action is an extreme sanction, and must be limited to truly egregious cases of misconduct. The Supreme Court has indicated that: a plaintiff should not be assessed his opponent's attorney's fees unless a court finds that his claim was frivolous, unreasonable or groundless ... [a]nd, needless to say, if a plaintiff is found to have brought or continued such a claim in bad faith, there will be an even stronger basis for charging him with attorney's fees incurred by the defense.

*Jones v. Cont'l Corp.*, 789 F.2d 1225, 1232 (6th Cir. 1986) (quoting *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 422 (1978)).

Defendant maintains that Plaintiffs' Title IX claim was "frivolous, unreasonable or groundless" insofar as they asserted it without evidence or an allegation of adverse action "on the basis of sex," and continued to advance the claim in their proposed Amended Complaint even after being put on notice of the fatal flaws via Defendant's Motion to Dismiss. (ECF No. 19, 17-18.) Plaintiffs aver that Defendant is not entitled to fees because there is no evidence that they brought this action in bad faith, and they have not demonstrated exceptional circumstances that warrant the award of fees and costs for the filing of a Motion to Dismiss. (ECF No. 13, 6-7.) They also caution that an award of fees would put a "chilling effect on their rights to pursue litigation." (*Id.* at 6.)

The Court declines to exercise its discretion and impose sanctions in the form of assessing attorney's fees or costs. After reviewing the record, it is clear that this litigation does not present a case of misconduct or vexatious litigation on the part of Plaintiff's counsel; and there is no evidence that Plaintiffs brought this claim in bad faith. However, there is concern about the chilling effect brought on by Defendant's request for imposition of fees in this case; which factors

15

prominently in the Court's decision. Considering the facts, circumstances and nature of this case, it is no surprise to the Court that legal action resulted. It is true that, in this Court's view, Plaintiffs failed to allege sufficient facts to withstand Defendant's Motion to Dismiss, but this is a common occurrence in federal district court. A true injustice would occur if fees and costs were assessed in every case where a motion to dismiss was granted. And even though a considerable amount of discovery has occurred, ultimately this case was dismissed at the pleadings stage.

The Court **DECLINES** to award Defendant fees and costs incurred in the defense of Plaintiffs' Title IX claim.

## V.   CONCLUSION

Consistent with the foregoing, Defendant's Motion to Dismiss is **GRANTED** and Plaintiffs' Motion to Amend Complaint is **DENIED**. The Court does not reach Defendant's arguments seeking dismissal of Plaintiffs' request for injunctive relief and punitive damages, as any claim for relief is rendered moot by a finding that the Defendant is not liable for the alleged conduct. Last, the Court **DECLINES** to award Defendant fees incurred in the defense of Plaintiffs' Title IX claim.

**IT IS SO ORDERED** this 11th day of April, 2024.

*s/John T. Fowlkes, Jr.*
JOHN T. FOWLKES, JR.
UNITED STATES DISTRICT JUDGE
